IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BENNY LEON, JR.,

        Petitioner,            No. CIV S-06-1855 FCD CHS P

    vs.

RICHARD KIRKLAND, et al.,

        Respondents.        <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2004 conviction for voluntary manslaughter with personal use of a firearm, case CFR03243 in the California Superior Court, County of Sacramento.  Petitioner claims that (1) the trial court erred in excluding evidence of prior gang threats; (2) the trial court made several instructional errors; (3) the cumulative effect of these errors deprived Petitioner of due process of law; and (4) Petitioner's upper term sentence violates the principles announced by the Supreme Court in *Blakely v. Washington*.  After careful review of the record, this court has determined that Petitioner's claims must be rejected for the reasons that follow.

/////

/////

1

I. BACKGROUND

The following facts, taken from the California Court of Appeal's unpublished decision in case C047003[1], have not been rebutted with clear and convincing evidence and must, therefore, be presumed correct.  28 U.S.C. §2254(e)(1).

> Defendant and the victim, Rosalie Reyes, were living together in an apartment in Marysville at the time of the offense. On the evening of April 2, 2003, Antonio L., an acquaintance of both defendant and Reyes, accompanied them to a home on Highway 113. While there, Antonio overheard Reyes say something to defendant about money defendant had borrowed from her. Defendant left. Ten minutes later, defendant called Antonio and informed him that "some group of gangbangers confronted him about something" and defendant would not be able to come back and pick them up.
>
> Approximately 40 minutes after defendant departed, Antonio and Reyes obtained a ride back to defendant's apartment from Amber M. The three arrived around 1:00 a.m., got out of the car and approached the door. Reyes apparently did not have a key to the apartment and knocked on the door. There was a light on inside, but no answer. Reyes began "kicking, knocking, cussing," and yelling at the door. There was no answer and Reyes moved to a window where she knocked and yelled some more. Reyes then borrowed Amber's cell phone and made a call. Antonio heard a phone ringing inside the apartment. Amber overheard Reyes say into the phone "Open the front door" and then Reyes gave the phone back to Amber. Antonio heard footsteps inside walking toward the door. Defendant opened the door, looked outside, saw Amber and nodded at her. Defendant told Reyes to "Get the 'F' in here" as if he was trying to hurry her. He also said something to the effect she was making too much noise. As Reyes started into the apartment, defendant nudged her into the doorjamb and a shot was fired.
>
> Reyes fell to the floor and defendant reached down to pick her up. Defendant told Reyes to get up and to stop "playing around." He was screaming and hysterical and exclaimed that he had shot her. While holding Reyes in his arms, defendant said, "Don't die. I love you. I'll change."
>
> Antonio moved into the house, grabbed a telephone and called 911. He then picked up a handgun from the floor and threw it over a fence. The handgun was later recovered by police.

---

[1] Opinion is lodged in this record as Respondents' Exhibit 2 (10/24/06).

2

1
2
3
4
5
6
7
8
9
10
11
12

> The bullet from the single gunshot struck Reyes in the neck. It had been fired from a distance of 0 to 6 inches. Reyes died as a result of the wound. A firearms expert testified at trial that the weapon used by defendant had a trigger pull of 11.5 to 12 pounds, whereas a typical firearm has a trigger pull of three to seven pounds. The handgun was in working order at the time.
>
> Defendant was charged with first degree, premeditated murder (Pen . Code, § 187) and an intentional killing while lying in wait (Pen.Code, § 190.2, subd. (a)(15)). The defense proceeded on a theory that the killing was accidental, that defendant had armed himself because of gang threats, and had accidentally discharged the firearm as Reyes was entering the apartment. The jury was instructed on first and second degree murder as well as voluntary and involuntary manslaughter. The jury found defendant guilty of voluntary manslaughter. The jury also found defendant personally used a firearm in the commission of the offense. Defendant's motion for new trial was denied, and he was sentenced [to the upper term of 11 years, with an upper term enhancement of 10 years for the firearm use].

(Opinion at 1-2.)

13   II.  STANDARD OF REVIEW FOR GRANTING HABEAS CORPUS RELIEF

14            An application for a writ of habeas corpus by a person in custody under a

15   judgment of a state court may be granted only for violations of the Constitution or laws of the

16   United States.  28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993);

17   *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107,

18   119 (1982)).  A federal writ is not available for alleged error in the interpretation or application

19   of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146,

20   1149-50 (9th Cir. 2000); *Middleton*, 768 F.2d at 1085.  Nor can habeas corpus be utilized to try

21   state issues *de novo*.  *Milton v. Wainwright*, 407 U.S. 371, 377 (1972).

22            This petition for writ of habeas corpus was filed after the effective date of, and

23   thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh*

24   *v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir.

25   1999).  Under AEDPA, federal habeas corpus relief is not available for any claim decided on the

26   merits in state court proceedings unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the Unites States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 *U.S.C.* §2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

The "contrary to" and "unreasonable application" clauses of section 2254(d)(1) are different. Under the "contrary to" clause of section 2254(d)(1), a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides the case differently than the Supreme court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405. As the Third Circuit has explained, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome." *Matteo v. Superintendent*, *SCI Albion*, 171 F.3d 877, 888 (3rd Cir. 1999) (en banc) (emphasis in original). The state court is not required to cite the specific controlling test or the Supreme Court authority, so long as neither the reasoning nor the result of the state court decision contradict same. *Early v. Packer*, 537 U.S. 3, 8-9 (2002).

The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. *Williams*, 529 U.S. at 409-10. The focus of this inquiry is whether the state court's application of clearly established federal law is objectively unreasonable. *Id*. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*.

1    The court will look to the last reasoned state court decision in determining

2  whether the law applied to a particular claim by the state courts was contrary to the law set forth

3  in the cases of the United States Supreme Court or whether an unreasonable application of such

4  law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert dismissed*, 538 U.S.

5  919 (2003). A court may deny habeas corpus relief on the ground that relief is precluded by 28

6  U.S.C. §2254(d) without addressing the merits of the claim. *Lockyer v. Andrade*, 538 U.S. 63,

7  71 (2003).

8              III. ANALYSIS OF PETITIONER'S CLAIM

9  A. EXCLUSION OF EVIDENCE

10    Petitioner claims that the trial court erred in excluding evidence of his "state of

11  mind," specifically that he had been the recipient of prior gang threats. Petitioner asserts the

12  evidence could have demonstrated the shooting was an accident. (Petition at 5.)

13    At the beginning of the prosecution's case-in-chief, Antonio Lule testified that

14  Petitioner called him the night of the shooting and "said that some group of gangbangers had

15  confronted him about something and said that he wasn't going to be able to pick us up..." (RT at

16  57.[2]) Subsequently, during the defense case, Antonio returned to the stand and was asked about

17  his knowledge of prior threats made against Petitioner. (RT at 287-88.) After the trial court

18  sustained the prosecution's objection for relevance, defense counsel made an offer of proof,

19  outside the presence of the jury, that

20         on December 31st of 2002, which is four months prior to this
           incident, Mr. Leon had been basically threatened by a group of
21         individuals at his residence. Later on that particular night, that is
           the night of April 1st when Mr. Leon was at the gas station, he was
22         threatened by individuals there, and he went home. He then called
           and talked to [Antonio] telling him, one, that he had been
23         threatened, two that he couldn't come -- he was basically afraid to
           come out and for them to come home and be careful. The

24  /////

25  ───────────────

26    [2] Reporter's Transcript ("RT") is lodged in this record as Respondent's exhibit dated
    (10/25/06).

                                    5

1    relevance of that is that Prosecution is going to argue "Why did he
     come to the door with a gun?"
2

3    (RT at 288.)  The trial court indicated it would not allow the evidence to come in, and defense

4    counsel moved on to other areas.  (RT at 288.)

5          Because a violation of state law does not ordinarily provide a basis for habeas

6    relief (*Estelle*, 502 U.S. at 67-68), a state court's evidentiary ruling, even if erroneous, is grounds

7    for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to

8    violate due process.  *Drayden v. White*, 232 F.3d 704, 710 (9th Cir. 2000), *cert. denied*, 532 U.S.

9    984 (2001); *Spivey v. Rocha*, 194 F.3d 971, 977-78 (9th Cir. 1999).  Criminal defendants have a

10   fundamental due process right, implicit in the Sixth Amendment, to present a defense.

11   *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Crane v. Kentucky*, 476 U.S. 683, 690

12   (1986).  However, that right is not unlimited.  *Greene v. Lambert*, 288 F.3d 1081, 1090 (9th Cir.

13   2002).  A state law justification for exclusion of evidence does not abridge a criminal defendant's

14   right to present a defense unless it is "arbitrary or disproportionate" and "infringe[s] upon a

15   weighty interest of the accused."  *United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Crane*,

16   476 U.S. at 689-91 (discussing the tension between the discretion of state courts to exclude

17   evidence at trial and the federal constitutional right to "present a complete defense").

18         When evidence in a state proceeding has been excluded pursuant to an evidentiary

19   law, the Ninth Circuit uses a balancing test:

20         In weighing the importance of evidence offered by a defendant
           against the state's interest in exclusion, the court should consider
21         the probative value of the evidence on the central issue; its
           reliability; whether it is capable of evaluation by the trier of fact;
22         whether it is the sole evidence on the issue or merely cumulative;
           and whether it constitutes a major part of the attempted defense.  A
23         court must also consider the purpose of the [evidentiary] rule; its
           importance; how well the rule implements its purpose; and how
24         well the purpose applies to the case at hand.  The court must give
           due weight to the substantial state interest in preserving orderly
25         trials, in judicial efficiency, and in excluding unreliable or
           prejudicial evidence.
26

                                          6

*Alcala v. Woodford*, 334 F.3d 862, 877 (9th cir. 2003) (quoting *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir. 1985)); *see also Perry v. Rushen*, 713 F.2d 1447, 1452-53 (9th Cir. 1983), *cert. denied*, 469 U.S. 838 (1984).

The California Court of Appeal noted that the trial court did not explain why it considered the evidence irrelevant, and reasoned that, at any rate, the evidentiary exclusion was "harmless beyond a reasonable doubt" under the standard announced in the Supreme Court case *Chapman v. California*:

> [A]ssuming the evidence was improperly excluded, defendant was not thereby prejudiced... The jury was informed that defendant told Antonio he could not come to get them because he had been confronted by a group of "gangbangers." Evidence that defendant had been threatened at a gas station was merely elaboration on this confrontation. As for the threats four months earlier, it is unlikely the jury would have considered this significant in light of what had already been introduced about more contemporaneous threats. Even under the more stringent standard of *Chapman v. California*, the evidentiary exclusion was harmless beyond a reasonable doubt.

(Opinion at 3-4 (internal citation omitted)).

In order to grant habeas relief where a state court has determined that a constitutional error was harmless, a reviewing court must determine: (1) that the state court's decision was "contrary to" or an "unreasonable application" of federal law with respect to harmless error, and (2) that the petitioner suffered prejudice under *Brecht v. Abrahamson* (507 U.S. 619 (1993)) as a result of the constitutional error. *Inthavong v. LaMarque*, 420 F.3d 1055, 1059 (9th Cir. 2005) (concluding that the decision of the state appellate court, that any error in the admission of petitioner's confession in his murder trial was harmless beyond a reasonable doubt, was objectively reasonable); *See also Mitchell v. Esparza*, 540 U.S. 12, 17-18 (2003) (when a state court determines that a constitutional error is harmless, a federal court may not award habeas relief under § 2254 unless that harmlessness determination itself was unreasonable). Both of these tests must be satisfied before relief can be granted. *Inthavong*, 420 F.3d at 1061.

1        This court finds that the decision of the California Court of Appeal was not

2   contrary to or based on an unreasonable application of federal law on harmless error.  Moreover,

3   assuming arguendo that the trial court erred in excluding the evidence, Petitioner has failed to

4   demonstrate that he suffered actual prejudice under *Brecht*.  As noted by the California Court of

5   Appeal, evidence that Petitioner told Antonio that he could not come get them because he had

6   been confronted by a group of "gangbangers" on the day of the shooting was already before the

7   jury.  The only evidence that was excluded consisted of further elaboration on this confrontation

8   and evidence that additional threats occurred four months prior.  The excluded evidence would

9   not have been probative on the narrow issue of whether the trigger pull causing the gun to

10  discharge was an accident, but rather, only on questions relating to why Petitioner was armed and

11  who he believed to be outside the apartment.  There was ample evidence that Petitioner did not

12  believe it was "gangbangers" who were outside the apartment that night.  Both Antonio and

13  another witness, Amber, testified that the victim was loudly knocking, banging, and yelling for

14  Petitioner to open the door for several minutes.  (RT at 59; RT at 131.)  Amber also testified that

15  a porch light was on (RT at 140-41) and that Petitioner "looked at [her] and nodded" after he

16  came to the door.  (RT at 134.)  Antonio testified that he heard Petitioner make some statement

17  to the effect of "[Y]ou are making too much noise" (RT at 95), and heard him tell the victim to

18  "[G]et the 'F' in here" immediately before the victim was shot.  (RT at 62-63.)  Given this

19  evidence, the exclusion of additional testimony about prior gang threats could not have had a

20  substantial and injurious effect in determining the jury's verdict.  Accordingly, petitioner is not

21  entitled to relief on this claim.

22  B.  INSTRUCTIONAL ERRORS

23       Petitioner next claims that the trial court made several errors in instructing the

24  jury.  In general, a challenge to jury instructions does not state a federal constitutional claim.  *See*

25  *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107,

26  119 (1982)); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983).  In order to warrant

1    federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or

2    even "universally condemned,"' but must violate some due process right guaranteed by the

3    fourteenth amendment." *Prantil v. California*, 843 F.2d 314, 317 (9th Cir. 1988) (quoting *Cupp*

4    *v. Naughten*, 414 U.S. 141, 146 (1973)).  To prevail on such a claim, a petitioner must

5    demonstrate that the error "so infected the entire trial that the resulting conviction violates due

6    process." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991); *see also Henderson v. Kibbe*, 431 U.S.

7    145, 154 (1977); *Cupp*, 414 U.S. at 146-47.  "[N]ot every ambiguity, inconsistency, or deficiency

8    in a jury instruction rises to the level of a due process violation."  *Middleton*, 541 U.S. at 437.

9    "Relief may not be granted simply because an instruction may have been deficient in comparison

10   to the CALJIC model or California evidentiary rules."  *Estelle*, 502 U.S. at 72.  Where the

11   challenge is to a refusal or failure to give an instruction, the petitioner's burden is "especially

12   heavy," because an "omission, or incomplete instruction, is less likely to be prejudicial than a

13   misstatement of the law."  *Henderson*, 431 U.S. at 155.

14        1.  Accident Instruction

15        First, Petitioner claims the trial court erred in "refusing to instruct on the defense

16   of accident."  (Petition at 5.)  The requested instruction provides that "[w]hen a person commits

17   an act or makes an omission through misfortune or by accident under circumstances that show

18   neither criminal intent nor purpose, nor [criminal] negligence, [he][she] does not thereby commit

19   a crime."  (CALJIC No. 4.45.)

20        It is well established that a criminal defendant is entitled to adequate instructions

21   on his theory of the case.  *See Conde v. Henry*, 198 F.3d 734, 740 (9th Cir. 1999), 198 F.3d 734,

22   739 (citing *Schmuck v. United States*, 489 U.S. 705 (1989)).  The Ninth Circuit has held that

23   whether a constitutional violation has occurred when a court refuses an instruction on an

24   attempted defense will depend upon the evidence in the case and whether the overall instructions

25   given to the jury adequately embodied the defendant's theory of the case.  *See Duckett v.*

26   *Godinez*, 67 F.3d 734, 746 (9th Cir. 1995) (omission of alibi instruction did not violate due

9

process because the overall instructions were sufficient given the evidence); *Cupp*, 414 U.S. at

147 (constitutionality determined not by focusing on ailing instruction "in artificial isolation" but

by considering effect of instruction "in the context of the overall charge").

This court concludes that the state trial court's failure to give the requested

accident instruction did not prevent Petitioner from presenting his defense or otherwise violate

his right to due process.  Petitioner, through counsel, was allowed to argue his theory in full to

the jury that the shooting was an accidental, unintentional discharge of the gun.  (RT at 362-367.)

The jury was instructed on every element of first degree murder, second degree murder,

involuntary manslaughter and voluntary manslaughter (RT at 326-333), and was also told that the

defendant "is presumed to be innocent until the contrary is proved."  (RT at 324.)  The omitted

accident instruction did not prevent the jury from considering the defense theory of the case.  If

the jury believed that the firing of the gun was accidental and unintentional, they could have

found Petitioner guilty of involuntary manslaughter, or no crime at all.  Instead, they found him

guilty of voluntary manslaughter, which requires a finding that the killing was either intentional

or occurred under circumstances suggesting a conscious disregard for life.  By definition, these

findings preclude a contemporaneous finding of accident.  On the evidence and the overall

instructions given to the jury, Petitioner was afforded a fair trial which did not violate his right to

due process.  *Compare Conde*, 198 F.3d at 741 (trial court violated petitioner's right to due

process where it improperly precluded defendant's attorney from making closing argument

explaining the defendant's theory of the case, refused to instruct the jury on the defendant's theory

and, over the defendant's objection, gave erroneous instructions that did not require that the jury

find every element of the offense).  In this case, the overall instructions to the jury embodied the

defense theory of the case, and did not violate Petitioner's right to due process.   Accordingly,

this claim must be rejected.

/////

/////

10

1        2. Involuntary Manslaughter Instruction

2                Petitioner next claims that the court's jury "instruction defining involuntary

3    manslaughter was erroneous."  (Petition at 6.)  The trial court instructed the jury in this case on

4    involuntary manslaughter as follows:

5                In the crime involuntary manslaughter, Penal Code 192(b), which
             is a lesser crime, there must exist a unit or joint operation of act or
6             conduct and general criminal intent.  General criminal intent does
             not require an intent to violate the law.  When a person
7             intentionally does that which the law declares to be a crime, he is
             acting with general criminal intent, even though he may not know
8             his act or conduct is unlawful.

9                The Defendant is accused of the lesser-included offense of having
             committed the crime of involuntary manslaughter in violation of
10            Section 192, subdivision (a) of the Penal Code.  Every person who
             unlawfully kills a human being without malice aforethought, and
11            without an intent to kill, or with (sic) conscious disregard for
             human life, is guilty of the crime of involuntary manslaughter in
12            violation of Penal Code Section 192, subdivision (a).

13               A killing in conscious disregard for human life occurs when a
             killing results from an intentional act, the natural consequences
14            of which are dangerous to life, which act was deliberately performed
             by a person who knows that his conduct endangers the life of
15            another and who acts with conscious disregard for human life.

16               A killing is unlawful within the meaning of this instruction if it
             occurred during the commission of an unlawful act which is
17            dangerous to human life under the circumstances of its
             commission, or in the commission of an act, ordinarily lawful,
18            which involves a high degree of risk of death or great bodily harm,
             without due caution and circumspection.  In order to prove this
19            crime, each of the following elements must be proved: A human
             being was killed, and the killing was unlawful.

20

21   (RT at 331-332.)  Petitioner argues the court should have given, in addition, an instruction

22   defining "without due caution and circumspection" as

23               negligent act[s] which [is] [are] aggravated, reckless and flagrant
             and which [is] [are] such a departure from what would be the
24            conduct of an ordinarily prudent, careful person under the same
             circumstances as to be in disregard for human life, or an
25            indifference to the consequences of such act[s]...

26   (CALJIC No. 8.46.)  Petitioner further argues that the court should have elaborated on the

11

offense, i.e., brandishing, that would qualify as an "unlawful act."  (Petition at 6.)

As to this claim, the California Court of Appeals reasoned:

> Defendant cites nothing to support his contention the court was required to give CALJIC No. 8.46. Assuming such requirement exists, defendant was not harmed by the failure to define due caution and circumspection. As defendant argues, the jury was left to conclude that simple negligence, rather than criminal negligence, will suffice. If so, this lesser standard would have made it *more* likely the jury would find involuntary manslaughter rather than less likely. Instead, the jury found defendant guilty of voluntary manslaughter. In effect, the jury concluded defendant either intentionally killed Reyes or acted with conscious disregard for life. There is no reason to believe this verdict was influenced by the definition of involuntary manslaughter given to the jury.
>
> Defendant contends the court was required to specify that the unlawful act need not be a felony. However, except for the use note to CALJIC No. 8.45, defendant cites nothing to suggest such clarification is appropriate. A reasonable interpretation of "unlawful act" would include non-dangerous felonies and misdemeanors. (See *People v. Morales* (1975) 49 Cal.App.3d 134, 143-145.) As for naming the misdemeanor, defendant did not request that the court do so. Such a naming would, in fact, have limited the breadth of the instruction and made it less likely the jury would find involuntary manslaughter. At any rate, because the jury found defendant acted either intentionally or with conscious disregard, the fact it might also have found the shooting occurred in the commission of brandishing is of no moment. A person who kills intentionally or with conscious disregard for human life, whether or not in the commission of a misdemeanor, is guilty of voluntary manslaughter.

(Opinion at 6-7.)

Assuming, arguendo, that the trial court erred in omitting these additional instructions, it appears for the reasons set forth by the state appellate court that the omission probably had no effect on the jury verdict.  *See Henderson*, 431 U.S. at 156-57 ("even if we were to make the unlikely assumption that the jury might have reached a different verdict pursuant to an additional instruction, that possibility is too speculative to justify the conclusion that constitutional error was committed").  This court rejects the claim that the omission of a more complete instruction on involuntary manslaughter so infected the entire trial that Petitioner's conviction violated due process.

3.  Voluntary Manslaughter Instruction

Petitioner claims that the trial court "erred in failing to include the concepts of imperfect self-defense and heat of passion in the instruction defining voluntary manslaughter." (Petition at 6.)  The trial court instructed the jury on voluntary manslaughter as follows:

> Every person who unlawfully kills another human being without malice aforethought but either with an intent to kill or with conscious disregard for human life, is guilty of voluntary manslaughter in violation of Penal code section 192, subdivision (a).
>
> The phrase 'conscious disregard for life,' as used in this instruction, means that a killing results from the doing of an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his or her conduct endangers the life of another and who acts with conscious disregard for life.
>
> In order to prove this crime, each of the following elements must be proved: One, a human being was killed; two, the killing was unlawful; and three, the perpetrator of the killing either intended to kill the alleged victim or acted in conscious disregard for life; and three [sic], the perpetrator's conduct resulted in the unlawful killing.

(RT at 330-331.)  Petitioner claims that the lack of instruction on heat of passion and imperfect defense created confusion about the issue of "whether this was a conscious disregard shooting at all."  (Petition at 6.)

As to this issue, the California Court of Appeals reasoned:

> Both heat of passion and imperfect self-defense negate the malice necessary for murder.
>
> Even assuming the court was required to instruct on these two theories, defendant was not harmed by their exclusion. "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury ... unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) "[M]iscarriage of justice occurs if based upon the entire record the court concludes that it is reasonably probable that a result more favorable to appellant would have been reached in the absence of

error. ( *People v. Watson* (1956) 46 Cal.2d 818, 837.)" ( *People v. Forster* (1985) 169 Cal.App.3d 519, 525.)

Defendant contends the lack of a complete instruction on voluntary manslaughter created confusion between voluntary and involuntary manslaughter. According to defendant, if the jury "had been informed voluntary manslaughter was premised upon the concepts of reasonable provocation or unreasonable self-defense, there is every probability they would have rejected these tenuous theories and concluded this was a misdemeanor-manslaughter or a grossly negligent killing short of conscious disregard."

We disagree. Heat of passion and imperfect self-defense are theories that create a distinction between voluntary manslaughter and murder. They negate the malice necessary for murder. Here, the jury concluded the killing was either intentional or under circumstances involving a conscious disregard for life, but without malice. Because the jury found no malice, instructions on heat of passion or imperfect self-defense would have changed nothing. They would not have served, as defendant appears to suggest, to reduce conscious disregard to some lesser mental state.

(Opinion at 7-8.)  This court agrees with the reasoning of the state appellate court that the additional instructions would not have influenced the jury's verdict since the jury ultimately found Petitioner did not act with malice.  As with the alleged error with respect to the involuntary manslaughter instruction, the possibility that this omission so infected the trial as to result in a denial of due process is far too speculative to justify the conclusion that constitutional error was committed.  Petitioner's claim regarding the voluntary manslaughter instruction must also be denied.

     4.  Absence of Flight Instruction

     Petitioner claims the trial court erred in refusing to instruct on the absence of flight.  (Petition, see attachment.)  The California Court of Appeal rejected the claim as the California Supreme Court has conclusively determined there is no constitutional right to an instruction on the absence of flight because "such an instruction would invite speculation; there are plausible reasons why a guilty person might refrain from flight."  (Opinion at 7) (citing *People v. Staten*, 24 Cal.4th 434, 459 (2000)).  The Ninth Circuit has also determined that there

14

1   is no constitutional error in refusing a requested instruction on the absence of flight.  *United*

2   *States v. Scott*, 446 F.2d 509, 510 (9th Cir. 1971) (stating "experimental observations do not give

3   substantial assurance that [failure to flee] makes it more likely than not that the person arrested is

4   innocent of the offense with which he is charged).  Accordingly, Petitioner's due process rights

5   were not violated when the trial court refused to instruct the jury on the absence of flight.

6   C.      CUMULATIVE ERROR

7           In some cases, although no single trial error examined in isolation is sufficiently

8   prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a

9   defendant.  *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996).  However, a court

10  may not grant a writ of habeas corpus on the basis of errors of state law unless the combined

11  effect violates the Constitution.  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465

12  U.S. 37, 41 (1984).  "The Constitution entitles the defendant to a fair trial, not a perfect one."

13  *Rose v. Clark*, 478 U.S. 570, 579 (1986).

14          Petitioner claims that the cumulative effect of these errors deprived him of due

15  process of the law.  (Petition, see attachment.)  The California Court of Appeal disagreed.

16  (Opinion at 7.)  For the reasons set forth above with respect to each claim, this court also

17  disagrees.  Importantly, three of the four alleged errors most likely had no impact on the jury's

18  verdict while the fourth alleged error is not a constitutional error as a matter of law.  Petitioner is

19  not entitled to relief on his claim of cumulative error.

20  D.  BLAKELY ERROR

21          Petitioner claims the trial court erred in imposing upper terms for voluntary

22  manslaughter and the firearm use enhancement because the court relied upon facts not submitted

23  to the jury and proved beyond a reasonable doubt, thereby violating the Sixth Amendment

24  principles enunciated in *Blakely v. Washington*, 542 U.S. 296 (2004).  (Petition, see attachment.)

25  This court agrees, but finds that the error was harmless under the circumstances of this case.

26  /////

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a trial by jury, applicable to state criminal proceedings through the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 149-150 (1968).  In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the United States Supreme Court clarified a defendant's rights under the Sixth Amendment by extending the right to trial by jury to any fact finding used to make enhanced sentencing determinations above the statutory maximum for an offense.  "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 488-90.  Subsequently, the court held in *Blakely v. Washington* that "the statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. *Blakely*, 542 U.S. at 303 (2005).  Next, the court applied *Apprendi* and *Blakely* to invalidate the then-mandatory Federal Sentencing Guidelines.  *United States v. Booker*, 543 U.S. 220, 243-244 (2005).

Under California's Determinate Sentencing Law at the time Petitioner was sentenced, the trial court was statutorily directed to impose the middle term of three possible terms (upper, middle and lower), unless there were circumstances in aggravation or mitigation of the crime.  Cal. Penal Code §1170(b) (2004); *see also* Cal. R. Ct. 4.420, 4.421, 4.423 (1977). Under the rules, circumstances in aggravation and mitigation must be established by a preponderance of the evidence, and selection of the upper term was justified only if, after consideration of all relevant facts, the circumstances in aggravation outweigh the circumstances in mitigation." Cal. R. Ct. 4.420(b).  The Rules also specified a non-exhaustive list of aggravating and mitigating factors, including factors relating to the crime and to the defendant. Cal. R. Ct. 4.421, 4.423.

/////

/////

1    In this case, the trial court identified two circumstances as supporting the choice

2    of the upper term for Petitioner's base term.  (RT at 423-24).  The trial court found, pursuant to

3    Rule 4.421(a)(1), that the crime involved acts disclosing a high degree of cruelty, viciousness, or

4    callousness.  The trial court further found that the victim was particularly vulnerable pursuant to

5    Rule 4.421(a)(3).  In mitigation, the trial court found that Petitioner had no prior criminal

6    offenses pursuant to Rule 4.423(b)(1).  After concluding that the circumstances in aggravation

7    outweighed the circumstance in mitigation, the trial court imposed the upper base term of 11

8    years.  The trial court also imposed the upper term of 10 years for the fire arm use enhancement

9    based on its finding that the victim was particularly vulnerable pursuant to Rule 4.421(a)(3).

10    In *Cunningham v. California*, the United States Supreme Court, citing *Apprendi*,

11    *Blakely*, and *Booker*, held that California's Determinate Sentencing Law violated a defendant's

12    right to a jury trial to the extent it permitted a trial court to impose an upper term based on facts

13    found by the court rather than the jury.  *Cunningham v. California*, 549 U.S. 270 (2007).

14    *Cunningham* had not yet been decided when Petitioner's conviction became final.  However, the

15    Ninth Circuit has determined that *Cunningham*, unlike *Apprendi*, *Blakely*, and *Booker*, did not

16    announce a new rule of constitutional law and therefore should be applied retroactively on

17    collateral review.  *Butler v. Curry*, 528 F.3d 624, 639 (9th Cir. 2008).  Accordingly, *Cunningham*

18    applies to Petitioner's case.

19    *Cunningham* dictates this court's finding that Petitioner's constitutional right to

20    trial by jury was violated when he was sentenced under California's Determinate Sentencing Law

21    to upper terms based solely on circumstances neither admitted nor submitted to the jury and

22    proved beyond a reasonable doubt.  Having held there was a constitutional violation, this court

23    must also determine whether the requirements of AEDPA have been met.  The California Court

24    of Appeal properly cited *Blakely*, but ultimately rejected Petitioner's claim, citing then-binding

25    precedent of the California Supreme Court in *People v. Black*, 35 Cal.4th 1238 (2005)*.  (Opinion

26    at 8.)  The Ninth Circuit's decision in *Butler v. Curry* is instructive here.  In *Butler*, the Ninth

17

1    Circuit determined that the legal precedents of *Apprendi*, *Blakely*, and *Booker* compelled the

2    conclusion that California's Determinate Sentencing Law was unconstitutional even prior to the

3    *Cunningham* decision.  *Butler*, 528 F.3d at 634-35 (finding that the California Supreme Court's

4    decision in *Black* was contrary to the clearly established law of the Supreme Court as set forth in

5    *Apprendi*, *Blakely*, and *Booker*).  *Apprendi*, *Blakely*, and *Booker* were all decided prior to the

6    time Petitioner's conviction became final.  Since existing Supreme Court precedent required a

7    different result than that reached by the California Court of Appeal, this court must conclude that

8    the state appellate court's determination of Petitioner's *Blakely* claim was indeed contrary to

9    clearly established Supreme Court precedent.

10           The last question to consider is whether the error was harmless, as error under

11   *Apprendi* and its progeny is subject to harmless error analysis.  *Washington v. Recuenco*, 548

12   U.S. 212, 218 (2006).  Applying *Brecht v. Abrahamson*, this court must determine whether the

13   error "had substantial and injurious effect or influence in determining the jury's verdict."  *See

14   also Hoffman v. Arave*, 236 F.3d 523, 540 (9th Cir. 2001).  Under that standard, relief must be

15   granted if there exists "grave doubt" as to whether a jury would have found the relevant

16   aggravating factors beyond a reasonable doubt.  *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

17   Grave doubt exists when, "in the judge's mind, the matter is so evenly balanced that he feels

18   himself in virtual equipoise as to the harmlessness of the error."  *Id*. At 435.

19           Under California law, only one aggravating factor is necessary to set the upper

20   term as the maximum term.  *See* Cal. R. Ct. 4.420; *People v. Cruz*, 38 Cal.App.4th 427, 433 (2nd

21   Dist. 1995); *People v. Forster*, 29 Cal.App.4th 1746, 1758 (4th Dist. 1994).  Any *Blakely* error

22   therefore will be found harmless if it is not prejudicial as to just one of the aggravating factors at

23   issue.  *Butler v. Curry*, 538 F.3d at 648.  With these principles in mind, this court will review the

24   aggravating factor that formed the basis for Petitioner's upper base term as well as his upper term

25   enhancement.

26   /////

18

1    The trial court found that the victim in this case was particularly vulnerable

2    pursuant to Rule 4.421(a)(3) because the crime occurred as she was entering her own home.  The

3    trial judge explained:

> "she is standing in a small area outside the door of the apartment, it
> is well lit, based on the believable evidence.  Mr. Leon is inside a
> dark apartment.  Given the time of day, this occurred without
> artificial light being on in the apartment when he opened the door.
> The victim is totally visible.  He is basically invisible because of
> the difference."

8    (RT at 410 & 423.)  Under California law, vulnerable means "defenseless, unguarded,

9    unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act."

10   *People v. Weaver*, 149 Cal.App.4th 1301, 1314 (4th Dist. 2007) (quoting *People v. Smith*, 94

11   Cal.App.3d 433, 435 (4th Dist. 1979).  This aggravating circumstance is applied where the age or

12   physical characteristics of the victim, or the circumstances under which the crime is committed,

13   make the defendant's act especially contemptible.  *People v. Bloom*, 142 Cal.App.3d 310, 321-22

14   (2nd Dist. 1983).  A victim is "particularly" vulnerable in this context  only if she is vulnerable to

15   a special or unusual degree, to an extent greater than in other cases.  Butler, 528 F.3d at 649;

16   People *v. Loudermilk*, 195 Cal.App.3d 996, 1007 (1st Dist. 1987) (quoting *Smith*, 94 Cal.App.3d

17   at 436).  Thus, a victim is not "particularly" vulnerable where all victims of the crime of

18   conviction are vulnerable in the same manner.  *See Bloom*, 142 Cal.App.3d at 322 (stating that

19   "[a]ll victims of drunk drivers are 'vulnerable victims'").

20   The sudden manner in which an unarmed and unsuspecting victim is shot can

21   support a finding of "particular" vulnerability.  *People v. Eades*, 95 Cal.App.3d 688, 690 (3rd

22   Dist. 1979).  The fact that a victim was at her own home may be properly considered (*see People*

23   *v. Nevill*, 167 Cal.App.3d 198, 205 (4th Dist. 1985) (unsuspecting, unarmed, physically and

24   mentally abused woman shot to death in the bedroom of her own home was particularly

25   vulnerable), as well as the relationship between the victim and the offender.  *People v. Curry*,

26   158 Cal.App.4th 766, 794 (3rd Dist. 2007) (victim properly found to be particularly vulnerable to

1   physical attack where offender and victim had dated for seven months and offender was the

2   father of the victim's unborn child).

3          There is little doubt, based on the evidence presented at trial, that the jury in this

4   case would have concluded beyond a reasonable doubt that the victim was unarmed and

5   unsuspecting that her live-in partner, who fathered one of her children, would shoot her as she

6   attempted to enter her own home that night.  Accordingly, this court has no grave doubt that the

7   jury would have found Petitioner's victim to have been particularly vulnerable to the crime of

8   voluntary manslaughter within the meaning of Rule 4.421(a)(3).[3]  This single, non-prejudicial

9   aggravating factor supported the imposition of an upper term for both the base term and

10  enhancement of Petitioner's sentence.  Accordingly, both upper terms were properly imposed and

11  the *Blakely* error was harmless.

                              IV.  CONCLUSION

12

13         For the foregoing reasons, IT IS HEREBY RECOMMENDED that Petitioner's

14  application for a writ of habeas corpus be denied.

15         These findings and recommendations are submitted to the United States District

16  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty

17  days after being served with these findings and recommendations, any party may file written

18  objections with the court and serve a copy on all parties.  Such a document should be captioned

19  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

20  shall be served and filed within ten days after service of the objections.  The parties are advised

21

22         [3] This court notes that the Ninth Circuit, in *Butler v. Curry*, found "grave doubt" as to
    whether the victim of corporal injury to a spouse, who was in her own home, was particularly
23  vulnerable under California law.  This case is distinguishable from *Butler* in that there was
    conflicting testimony in *Butler* as to whether the victim was armed with a knife at the time of the
24  incident and also evidence that the victim had physically attacked the offender in the past.  In
    addition, as the Ninth Circuit noted in determining that the jury could have concluded that the
25  victim was not *more* vulnerable than other victims of domestic violence, "it is in the nature of
    domestic violence that its victims are vulnerable, because of their close relationship with their
26  attacker, their attacker's typically greater physical strength, and their isolation in their homes."
    *Butler*, 538 F.3d at 650.  The same cannot be said for all victims of voluntary manslaughter.

that failure to file objections within the specified time may waive the right to appeal the District

Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).


DATED: 11/07/08

CHARLENE H. SORRENTINO
UNITED STATES DISTRICT COURT

2Leon v. Kirkland 06-1855 F&R